This is our next case in the morning in re the Marriage of Turner. For the appellate Mr. Blunt, for the appellate Mr. Fanning, you may proceed. Thank you, your honor. May it please the court. Counsel. I represent Richard Turner, and he's an automobile mechanic, born in 1954. And I assume he's working right now. He works almost every day. And I'd much rather be in this courtroom with you all, thanks, than working on a car right now. We are here about the premarital agreement that the party signed before they were married. And the circuit court found that that agreement was valid, expressly found that. The circuit court was asked several times by Kelly to find the agreement unconscionable, and did not do so. The circuit court also followed the agreement, except with respect to my client's pension. The circuit court followed the agreement insofar as it said that the marital property should be divided evenly, going so far as to require a cash payment from my client for the express purpose of equalizing the marital property distribution. The circuit court expressly invoked the statutory hardship exception for maintenance for Kelly, to avoid the agreement's prohibition against maintenance. Also awarded child support. But the court simply ignored part of the agreement that said that all of Richard's pension was Richard's. Instead, the court divided his pension, as a court is to divide a pension in this state when there is no agreement. Well, not exactly. Didn't the trial court separate out the monthly pension benefit that was earned as of the date of the marriage, and separated that out as his non-marital property, in effect doing a quadro like you would if there was no marital settlement agreement? My point exactly. So, I mean, she did separate out the non-marital portion of his pension and only divided the marital portion. Right. As you said, Justice Appleton, exactly what would have happened if there had been no agreement. But isn't that true? That argument that you're making is also true of the other property listed on the schedules. So, in other words, he listed certain properties, like the motorcycle, the boat and trailer, the motor, and a home. I think there was some residential real estate. And so can't that same argument that you make here be applied to those assets? Those were non-marital assets. So why have a premarital agreement? You don't need it. That was his non-marital property. And that's the same argument you're making with respect to the pension. I'm not certain I follow the question, Your Honor. Okay, you said to Justice Appleton that that's the argument you're making, that the pension was covered by the premarital agreement, and the way the judge divided it was as if there was no premarital agreement. Yes, Your Honor. Right? She also gave him his non-marital property, the boat, the trailer, the motorcycle, which were scheduled assets in the premarital agreement. That is correct. She would have done that without regard to whether there was a premarital agreement, because that was non-marital property. Correct? My understanding is it was not exactly the same assets, Your Honor. That is, I don't think it was the same motorcycle. I have to say that it didn't occur to me that it was the same asset after all that time. The way I read it was it was a different asset. That part of the agreement, or those particular assets, I think were segregated from the marital property because, well, just in case it was a very short marriage. It was not a very short marriage, of course. But my understanding was that the only asset currently in existence at the time of the divorce was the pension, and I could be mistaken about that. Okay, but you represented him in the trial court, didn't you? No, I'm sorry, Your Honor. I didn't. Okay. I never heard of him until the judgment had been entered, Your Honor. Well, unfortunately, we don't have any explanation from the circuit court why the pension was divided as if there was no agreement. And all Richard's asking now is for this court to hold her to her word. She doesn't claim that she wouldn't have made the agreement if she had known the premarital value of the pension. She doesn't claim she was tricked. Frankly, we view this as Mrs. Turner looking to get lucky, to get a decision maker that would disobey the law, and she got one. Now she's arguing that – I'd like to turn to her argument – she's arguing that the trial court erred in applying Illinois law. And yet the record shows that the parties argued Illinois law consistently, that the first time Missouri law was mentioned was in this courtroom. Is there a difference? No. I mean, I know what Illinois law is, but I'll confess to not being up on Missouri law. I will as well, Your Honor. They do not have a premarital agreement act. But the difference that she's arguing that it makes is that certain statutes, Missouri statutes, apply to invalidate this agreement. And if you've noticed what those statutes are, she quotes them in her brief. Those statutes protect a person who buys real estate that is covered by a premarital agreement. In other words, those statutes require that property, if it is covered by a premarital agreement, that be noted with the county clerk in Missouri. So that you know, so that an innocent purchaser knows that that property cannot be freely bought and sold. And the second of the two statutes, and they follow each other in the book, they're consecutive statutes, the second of the two statutes even says that invalidity of a premarital agreement with respect to a third person does not affect its validity between the people that sign it. In other words, even in Missouri, if it's not registered, it still binds the husband and the wife. And I've got to think, if that's all, if that's all that Kelly's got to say on the subject of why Missouri law should govern, then what are we talking about here? That's meaningless. That's worthless. Mr. Blood, can I take you back to the issue I raised before? I had a chance to look at the appendix which contained the Troutcourt's order. And in paragraph six of her order, she did specify that the husband was awarded non- or premarital property, champion boat, motor, and trailer, and the 1990 Harley-Davidson motorcycle, which were the exact same scheduled assets in the premarital agreement. So I just had a chance to look at it and wanted to let you know. Well, you've accomplished more in a few minutes than I did in all the time that I had this case. Well, I think it kind of reinforces the position that we're making. The judge found the agreement valid. She was asked several times to find it unconscionable. Wouldn't do it. Followed the agreement. Why didn't she follow it on this point? I have no clue. I would not want to leave without pointing out that I think it's not just the legal result to give him his pension, but it's a just result. It's a fair result. He was born in 1954. He's a mechanic. I was born in 1952, and I can tell you that I cannot bend over so well. I'm going to have to get a bicycle that's a lot more upright this year. And she was born in 1966. And by her own estimate, it's in the record, she will in three years be earning as much as he is because she's going to school as a radiology technician and because the court ordered the hardship maintenance for three years so that she could do it. So in three years, she's going to be starting a career that she can do indoors, that she can do for quite a while, that she will be capable of having done for two decades by the time she's 65. My client, on the other hand, being almost as old as I am, a mechanic's career at this age is done. A mechanic just can't answer the bell at age 65 as perhaps a person who works indoors can. So she's got the opportunity now to earn her own retirement. He doesn't have any opportunity to earn retirement anymore. He's just about done. Mr. Blood, if you make a fairness or a justice argument, can't you on the other side argue for 17 years? They were married 17 by the time the divorce happened. She was at home with the children at least the first 15 before the divorce was filed. At his request to raise the children and she omitted those years from her working career. She couldn't earn a pension during that time. She couldn't get credits for it. So I mean I think you're kind of limited to the contract of the parties and what the law is and the justice argument can come both ways. I agree, Your Honor. I think that that's been, I'm countering what's been the argument right on through. In fact, she says in her brief, don't punish me for raising the children. I think you're exactly right, Your Honor. What I said, what I just said about him and his retirement, her and her retirement is irrelevant. You're absolutely right. But there's been an emotional appeal made and I wish to counter it. But if you're implying that what I said was irrelevant, I agree. I agree. It is. It can be made on both sides. It shouldn't be made on both sides. What the real justice is here is that she agreed. She agreed that the pension would be his. She married a man, considerably her senior, and agreed that if it ever ended, the pension was his. That's the real justice here. Hold us to our agreements. Agree slowly. If you do agree, keep your agreement. And if you won't keep your agreement, who can we turn to but the courts? Unless the court has questions, I will wait for rebuttal. Good morning, Your Honors. May it please the court, counsel. The court here determined that the premarital agreement was valid in this particular case. The court only applied that to the assets that were contained in the agreement. Now, the counsel had pointed out that she didn't apply it to the retirement. No, she distinguished the portion of the retirement in its application and said, no, it applies to the portion that accrued up until the time of the marriage. But it did not apply to basically anything that accrued during the marriage. He said, well, then, if that's the case, then why would you even list the assets? Well, if you take that analogy, like you said, irregardless of whether the assets existed at the time of the dissolution of marriage, none of the other assets would have been listed. Because those assets, in and of itself, by their existence prior to the marriage, would be characterized as non-marital, whether they existed or not at the time of the dissolution. So, if you look at the time of drafting of the contract, then there would be no need to list any of the other assets, the motorcycle, the truck, the boat, the other investment accounts at that time. So, by taking that analogy and saying there's no rationale to not extend that to new additional purchases of that contract. Now, the facts that we have here is we have a marriage of almost 17 years in the circumstances. A lady who, not necessarily by her choice, but at the request of her husband, gave up her working career for that time frame to dedicate it to making the home, raising the children, and gave up her career. Her retirement that she could have paid into, her investments that she could have purchased for her own retirement to allow her husband to continue working and accrue this benefit. To now, then, say that she is going to be basically punished for doing something that he requested, in our position, is totally unfair. Let me ask you the same question, basically, that I asked Mr. Blood. Let me ask it this way, maybe. Is it possible under the Uniform Premarital Agreement Act that we have here in Illinois to waive your right to a future benefit under a pension? I believe that it would be very difficult. I think that you would have to do, in that case, I think the person explaining that would have to give more of a financial analysis and a detail of that asset as far as how it's going to accrue, what the estimated benefits are from the retirement account, saying if he continues to invest at the current rate, what those benefits would be. There would have to be a lot more and complete disclosure as to what those potential benefits would be during the life of the person's working life until their retirement. If we look at the agreement here, what we would argue is that the court erred in holding that it's valid because we argued that it would be invalid, in particular, after that retirement. And for the reasons of that, we would say that it's invalid. Look, the court failed to analyze the relationship at the time of the execution of the agreement. There was a confidential relationship. Note that the contract was signed one day prior to the marriage. Therefore, it's evident by that fact that the parties were already in a situation to where they were going to be married. So with the engagement already being in place, there's a confidential relationship that exists at that point, and the court should have shifted the burden to the husband in this case to show by clear and convincing evidence that there was complete and accurate disclosure to her in reference to the existing benefits. And we argue that those even existing benefits weren't disclosed because he says value is unknown. There is no analysis as to what those benefits accrued would be yielding as to a benefit to him when he retires for just that portion, nor was there any analysis or financial disclosure as to the potential contribution or retirement earned from this retirement for a period of time up until he retires disclosed to her so that she would have an understanding that we're giving up something. Here we're talking about a circumstance where what he's asking us is to award him a retirement benefit that's accrued just to the date of the dissolution of marriage of over $2,000, of which she gets nothing and has no retirement benefit to supplement her income. And if I could just go back to one point of analysis, he says, oh, my client's old and he can't continue to work. She's younger. Well, there is a differentiation here and a special consideration given to him. The portion of the retirement that he accrued when he was younger prior to the marriage, he gets to keep that. So he gets a greater portion of that retirement benefit in the court's order. She's only getting the portion that was accumulated during the marriage. So there is additional compensation to him given for the time frame when he's younger and now he's not able to accumulate because she can continue to work given her age for a longer period of time. So what we're arguing is that the agreement, even if the court would take the application, is invalid. Now, the problem with that, though, is irregardless of whether the agreement was invalid, the retirement portion that accrued up until the time of marriage is premarital property and either way the court appropriately applied that to the husband. And we don't dispute that. The factor here, though, is, like you said, there has not been a complete disclosure by him in the benefits that would have accrued by that. The other aspect that you brought up was the Missouri law. The one point that we responded in reference to that was, they point out a fact that is not in evidence. The assumption that the parties wanted to use Illinois law in its application of the premarital agreement, that is just not, there is no evidence that was ever presented in reference to the intentions of the parties. Therefore, bound by the evidence, which is the premarital agreement, the contract in itself, and the residency, where it was executed, the residency of the parties, the application of the law in that contract is spelled out in there. I agree that both, since I was counsel representing the wife in this particular case, I did not bring that issue up, nor did the husband's counsel, nor the court. We agree that was not addressed in any manner in that respect of the court. But the fact was that the intentions of the parties is nowhere in the record as far as what their intentions were at the time of the execution of that document. We were dealing with a marriage that was contained within the state of Illinois. The benefits and the rights of those parties, the interest of that is an interest of the state of Illinois. Property was no longer in Missouri. It was now in the state of Illinois. Rightfully or wrongfully so, that was what was done. In the trial court, the situation here in reference to the premarital agreement, to say that it extends beyond its identification of the asset, goes beyond the document itself, as well as ignores the inadequate disclosure of that asset and its value contained in the agreement. The other aspect is that the court, so it is our basis that the court appropriately applied the law as to its application because that asset was not a part of the premarital agreement. We disagree with the courts, as we've always had disagreed, that the premarital agreement is valid because we agree with the lack of disclosure. The other aspect of the case is that if the court for any particular reason would reverse the court's decision or vacate that and remand it, the court should do so to allow the court to consider the issue of maintenance, the issue of redistribution of the marital assets because certainly when she distributed the retirement, that she characterized as not a part of the premarital agreement, or the prenuptial agreement, she also considered the distribution of the other assets as well. And I think that would be a factor that should be allowed by the court in its analysis in that aspect. And I think that concludes it. Thank you. Thank you. Good. Rebuttal. Thank you, Your Honor. Counsel. Well, now we've heard an argument that you should make it open season on remand, assuming we get to remand, and this was the subject of a one-sentence argument in a police brief, so basically Kelly's asking this court to be law clerks for her in figuring out why it should be open season on remand if indeed you agree that the court erred concerning the prenuptial agreement. Of course, Justice Pope, answering your question, of course it's possible to waive an interest in a pension. We've cited many cases on the point. Illinois, unfortunately, doesn't have them because there's very little litigation of record in Illinois under this act, but it is a uniform act. And also... I thought of State of Hopkins. It was a pre-uniform act case, but it does deal with the waiver of rights in a pension in Illinois under a premarital agreement. Yes, Your Honor. I think that was cited in the briefs. Yes, and no indication that the law's any different from that, and as we know, these uniform acts, they tend to track what's prevalent common law practice anyway. So I don't think there's any question there, and it's not even... As for the disclosure that's required, it's not even required to be written. It's not even... There's no specificity in particular required. It's just like anything else that this court sees on a day-to-day basis. It depends on the facts. And in this case, what's the difference that he had a $400-some retirement benefit at the time they got married? For one thing, that was not going to be hers in any event. Under the Hunt rule, under the way these things are divided without an agreement, that wasn't hers anyway. She knew darn well that he had a pension. I also heard from counsel several arguments that referred to what the judge heard, and might as well acknowledge the elephant in the room, there's no report of proceedings of the all-remaining issues hearing in this case. This court, the circuit court, follows the practice of starting a recording at the start of a hearing. You can imagine the chagrin of counsel and the judge at discovering at the end of the hearing that they did not have a recording. At least that's what I am told happened in this case. I tried to track down a report of proceedings, and the fact is that if you talked to Mary, which of course she won't at the circuit court, she transcribed everything that's recorded there, there's nothing to transcribe. So as far as what the judge heard or did not hear in this case, unfortunately we're not going to know. But as this court also well knows, there's no reason that an appeal cannot be prosecuted without a report of proceedings. We certainly don't need to rely on it. Apparently, Kelly needs to rely on it a great deal from what this court just heard. But what the court heard, we don't know. For instance, did Kelly admit under oath that she knew how much the premarital portion of the pension was? I don't know if she did or she didn't. We don't have the record. We don't know. So, in conclusion, if there are no questions, I would simply request that this case be remanded for the sole purpose of holding Kelly to her word on this prenuptial agreement and awarding my client his pension in full. Thank you. Thank you, counsel. We'll take this matter under advice.